Frank A. CARTER, Jr., Chief
Disciplinary Counsel

v.

Louis B. ABILHEIRA.

No. 82–495–M.P.

Supreme Court of Rhode Island.

Dec. 1, 1982.

Frank A. Carter, Jr., pro se.

Louis B. Abilheira, pro se.

## OPINION

PER CURIAM.

This is a disciplinary proceeding. On October 15, 1982, the respondent, Louis B. Abilheira (Abilheira), appeared before the court in chambers and attempted to show cause why he should not be disciplined in light of a finding made by this court's Disciplinary Board [1] that he had engaged in conduct that "adversely reflects on his fitness to practice law," a violation of DR 1–102(A)(6) of the Code of Professional Responsibility.

Abilheira, who has been a member of the Rhode Island Bar since November 1970, maintains an office in Warren, Rhode Island. During the time in question, he was also engaged in building and selling houses. One of his clients was the Columbus Credit Union, which is also located in Warren. In late April 1979, he entered into a dual relationship with the credit union when he borrowed $15,000 and in turn executed a demand promissory note made payable to the credit union's order.

When demand for full payment was made in April 1980, Abilheira agreed to pay off the note in monthly installments and also to apply the proceeds of any homes sold by him to reduce the credit union's claim. He made one payment; in late 1980 the credit union hired counsel, and suit was commenced in the Superior Court. Abilheira was represented in this proceeding by his brother. A year later, in April 1981, a consent judgment was entered in which Abilheira admitted liability on the note and the credit union waived the benefit of a provision in the note calling for attorneys' fees and costs.

On July 3, 1981, Abilheira sold a house, and on July 23 his brother, as Abilheira's attorney, forwarded to the credit union's attorney a check in an amount sufficient to discharge the note. In the letter of transmittal was a statement in which Abilheira's attorney said, "I would appreciate it if you would hold on to this check and not deposit

1. The hearing was held before a panel consisting of three members of the board. The panel's findings and recommendations were unanimously adopted by the board.

it until the funds have been transferred into the account." The credit union's attorney held the check for six days and then transmitted it to his client. The credit union then deposited the check, and in due course the check was returned with a notation that payment had been stopped. The record indicates that the stop-payment order was made by Abilheira without his brother's knowledge.

The check stoppage caused a reopening of the Superior Court action, which in turn resulted in the award of a counsel fee to the credit union's attorney. At this moment the note has been paid off, but an appeal is pending before us from the grant of the fee.

Abilheira has conceded before us, as he did before the board, that his difficulty arose because a customer for one of his houses had applied for a bank mortgage of over $50,000 but had received one of only $34,000. Consequently, Abilheira took back a second mortgage for the balance. He then issued a check to the credit union, hoping all the time that he could discount the second mortgage. The hope never became a reality, and as a consequence he stopped payment on the check rather than chance the initiation of criminal proceedings against him.

Before the board, Abilheira contended that he had issued the check because the credit union's attorney was aware that the mortgage had to be discounted in order that there would be sufficient cash in Abilheira's account to satisfy the check. This contention was rejected by the board because of its belief that the parties never intended that the credit union would have to wait until the sale of the second mortgage before it could cash the check.

Our license to practice law is granted upon the implied understanding that lawyers shall at all times demean themselves in a proper manner and shall refrain from such practices as would bring disrepute upon themselves, their profession, and the judicial system. One of the primary purposes of imposing discipline is for the protection of the public interest so that the public may be assured of the moral fitness and professional responsibility of everyone licensed to practice law before the courts of this state. Lawyers are professional persons seven days a week; in the minds of the public their professional status places them in a position of trust at all times, and much is to be expected of them.

The sentiments we have just expressed can be found in *State v. McNamara,* 68 Wis.2d 701, 229 N.W.2d 698 (1975). We subscribe to these sentiments and believe that they are quite apropos to the matter now before us. It is obvious that Abilheira's conduct in stopping the check adversely reflects upon his fitness to practice law and is deserving of public censure.

Accordingly, the respondent, Louis B. Abilheira, is publicly censured.